UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

KEVIN E. BONHAM,

               Plaintiff,

v.

FAMILY OUTREACH CENTER,
INC. et al.,

               Defendants.

_____/

Case No. 1:24-cv-1030

Honorable Jane M. Beckering

## OPINION

    This is a civil rights action brought by a county pretrial detainee[1] under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint because it is, in part, frivolous and the remainder fails to state a claim.

---

[1] Plaintiff is also held on a detainer from the Michigan Department of Corrections for violating the terms of his parole. *See* https://eisjailviewer.kentcountymi.gov/ (select Access Site, enter Last Name "Bonham," enter First Name "Kevin," select Search, select Booking # 2409616) (last visited Oct. 18, 2024).

## Discussion

### I.    Factual Allegations

Plaintiff is presently detained in the Kent County Correctional Facility pending further proceedings in *People v. Bonham*, No. 24-08256-FH (Kent Cnty. Cir. Ct.).[2] Plaintiff is charged with firearms offenses and with being a fourth habitual offender. Plaintiff has been housed at the Kent County Correctional Facility since shortly after his arrest on July 25, 2024.

Plaintiff's complaint does not relate to his present detention. Instead, it relates to an earlier detention in the Kent County Correctional Facility during 2021 and 2022. The events described in his complaint have already been the subject of a lawsuit in this Court: *Bonham v. Simmons* (*Bonham I*), No. 1:22-cv-248 (W.D. Mich.).[3] Plaintiff named three defendants in *Bonham I*: Theresa Simmons, her employer Family Outreach Center, Inc. (Family Outreach), and the Kent County Correctional Facility. Plaintiff's claims against those defendants were reduced to Judgment on February 1, 2024.

In the present complaint, Plaintiff sues the following Defendants: Family Outreach; the Kent County Sheriff's Office; Corizon Health Strategies; Vitalcore Health Strategies; Bradley Lyons; the Kent County Sheriff's Association; Theresa Simmons; Sergeant Unknown Santiago; Deputies Grant Dewitt and Unknown Jourdan; and Kent County Sheriff Michelle LaJoye-Young. At the heart of Plaintiff's complaint are his allegations that Defendant Theresa Simmons, a social

---

[2] The register of actions for *People v. Bonham* is available through the Kent County website, *see* https://www.accesskent.com/CNSearch/appStart (select Criminal Case Search, enter First Name "Kevin," enter Last Name "Bonham," enter Year of Birth "1989," select Search Criminal Cases, select Case Number "24-08256-FH") (last visited Oct. 18, 2024).

[3] Plaintiff also described the same events as a basis for relief in two habeas corpus proceedings. Plaintiff's petitions were dismissed as meritless in both proceedings. Op. & J., *Bonham v. LaJoye-Young*, No. 1:22-cv-694 (W.D. Mich. Aug. 9, 2022) (ECF Nos. 5, 7); Op. & J., *Bonham v. LaJoye-Young*, No. 1:22-cv-695 (W.D. Mich. Sept. 12, 2022) (ECF Nos. 5, 7).

worker with Family Outreach, sexually assaulted Plaintiff for several months—from July 23, 2021, to January 20, 2022—while he was detained pending trial in the Kent County Correctional Facility. Defendant Simmons was charged with second-degree criminal sexual conduct, aggravated assault, and furnishing contraband to a medically frail person. Register of Actions, *People v. Simmons*, No. 22-08531-FH (Kent Cnty. Cir. Ct.), available at https://www.accesskent.com/CNSearch/ appStart (select Criminal Case Search, enter First Name "Theresa," enter Last Name "Simmons," enter Year of Birth "1979," select Search Criminal Cases, select Case Number "22-08531-FH") (last visited Oct. 8, 2024). Simmons entered a *nolo contendere* plea to the assault and furnishing-contraband charges, and the criminal sexual conduct charge was dismissed.

In the present action, in addition to the allegations against Defendant Simmons, with regard to Defendant Dewitt, Plaintiff alleges "it all started on . . . July 23, 2021[,] when [Plaintiff] was denied a dinner tray by . . . Grant Dewitt because he . . . was retaliating on [Plaintiff] for getting help because [Plaintiff] and another inmate . . . heard rumors from other inmates that a deputy . . . named Jourden was having sexual encounters with some of the male inmates." (Compl., ECF No. 1, PageID.4.) That is the entirety of Plaintiff's allegations against Defendant Dewitt.

With regard to Defendant Jourden, in addition to the mention of his name in Plaintiff's allegation regarding Dewitt, Plaintiff alleges: "[o]ne day [Jourden] stopped at our door and asked 'did we hear if he got his dick sucked[?]'"(*Id.*) That question frightened Plaintiff and his cellmate. Plaintiff informed the mental health staff. A Prison Rape Elimination Act (PREA) investigation followed.[4] Plaintiff posits that the investigation started "the landslide of bullying and co[r]poral punishment that [Plaintiff] endured . . . ." (*Id.*, PageID.5.)

---

[4] The PREA was enacted to "implement[ ] standards and policies to prevent prison rape and to protect the Eighth Amendment rights of Federal, State, and local prisoners." *Does 8-10 v. Snyder*, 945 F.3d 951, 955–56 (6th Cir. 2019) (internal quotation marks omitted).

Plaintiff's allegations against Defendant Lyons appear to relate to the investigation. Specifically, Plaintiff alleges:

> Lt. Bradley Lyons comes into our cell while we were sleeping scaring . . . us awake, with questions about the situations listed about Dep. Jourden & Dewitt. During [the] conversation[,] I jumped off my (top) bunk to continue the conversation standing and for no reason, . . . Lyons got startled because [Plaintiff] jumped off [his] bed and well . . . He kinda in a way passed gas and ran out [of] our room.

(*Id.* (third ellipses in original).) Plaintiff claims that "these incidents" caused him to go to the discipline restrictive unit (DRU). (*Id.*) It was in the DRU that Simmons sexually assaulted Plaintiff.

Plaintiff reports that he is suing the "Kent County Sheriffs Office (Assn.)" because he complained about the sexual assaults but no one intervened. (*Id.*, PageID.6.) He is suing Family Outreach "for employing unprofessional employees . . . ." (*Id.*) Plaintiff notes that his schizophrenia, depression, and PTSD are worse, and his suicidal behaviors and thoughts are worse. (*Id.*) Plaintiff claims that $1,100,000.00 from Family Outreach Center "would rectify the abuse [he] endured from the behaviors of th[ei]r employees. VitalCore and Corizon Health Strategies also." (*Id.*)

Plaintiff alleges that Defendants' actions violated his First, Fifth, Eighth, and Fourteenth Amendment rights. (*See id.*, PageID.4.) As relief, Plaintiff seeks $10,000,000.00 from "Kent County Sheriffs Office, Assn. & et al." and $2,000,000.00 from Bradley Lyons. (*Id.*, PageID.7.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal *rights*, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     *Bonham I* Defendants

The defendants named in *Bonham I* were Theresa Simmons, Family Outreach, and the Kent County Correctional Facility. In that action, the Court dismissed Defendant Family Outreach because Plaintiff's only allegation relating to Family Outreach was a claim that Family Outreach employed Defendant Simmons. Op., *Bonham I* (ECF No. 13, PageID.52–53). The Court concluded that simply employing a person who violated Plaintiff's constitutional rights was not sufficient to

state a claim against Family Outreach. *Id*. Additionally, the Court dismissed Defendant Kent County Correctional Facility because the facility was simply a building, not an entity capable of being sued in its own right. *Id*. (ECF No. 13, PageID.51.) Construing Plaintiff's complaint liberally, the Court also addressed Plaintiff's claim against the facility as if Plaintiff had instead named Kent County. *Id*. (ECF No. 13, PageID.51–52). The Court concluded that the county could not be held vicariously liable for the actions of its employees under § 1983; rather, the county could only be held liable when its policy or custom caused Plaintiff's injury and Plaintiff had not identified a policy or custom. *Id*. Ultimately, a default judgment was entered against Defendant Simmons.

All of these determinations were merged into the Judgment entered by this Court. The entry of judgment in *Bonham I* has certain preclusive effects:

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id*., at 748–749, 121 S. Ct. 1808. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (footnote omitted). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits;[5] (2) the previous lawsuit was between the same parties or their privies; and (3) the previous

---

[5] With regard to the judgment against Simmons, "[a] judgment of a court having jurisdiction of the parties and of the subject-matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default." *Riehle v. Margolies*, 279 U.S. 218, 225 (1929); *Rice v. Liberty*

lawsuit involved the same claim or cause of action as the present case. *Allen*, 449 U.S. at 94; *accord Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring claims arising from the same transaction." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011) (citation omitted).

Plaintiff's allegations against Simmons and Family Outreach in the present complaint entirely overlap his allegations from the complaint—as amended and supplemented—in *Bonham I*. In both cases Plaintiff alleges that Simmons is liable for her sexual assaults of Plaintiff between July 2021 and January 2022, and Plaintiff claims that Family Outreach is liable for employing her.[6] All of the requirements for preclusion are present here. Accordingly, Plaintiff's claims against Simmons and Family Outreach are properly dismissed.

---

*Surplus Ins. Corp.,* 113 F. App'x 116, 122 (6th Cir. 2004) (quoting *Riehle*). With regard to the judgment against the other Defendants in *Bonham I*, "dismissal for failure to state a claim . . . is a 'judgment on the merits.'" *Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).

[6] Even if Plaintiff's present claim against Family Outreach were not precluded by the judgment in *Bonham I*, the claim would still be properly dismissed because Family Outreach may not be held vicariously liable for the actions of its employees under § 1983. A corporation cannot be vicariously liable under § 1983 for the acts of an employee or independent contractor. *See, e.g.*, *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992), for the proposition that a corporation "cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis," since though *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), "involved a municipal corporation . . . every circuit to consider the issue has extended the holding to private corporations as well").

**B.      Defendants "Kent County Sheriffs Office" and "Kent County Sheriffs Ass'n"**

Although Plaintiff has not named the Kent County Correctional Facility as a defendant in this action, he has named the "Sheriffs Office" and the "Sheriffs Ass'n."

The Court has been unable to identify any entity known as the "Kent County Sheriffs Ass'n." The Michigan Department of Licensing and Regulatory Affairs identifies only one similarly named entity: the Kent County Deputy Sheriffs Association. *See* https://cofs.lara.state. mi.us/SearchApi/Search/Search (enter Entity name "Kent County Sheriffs, " select Entity Name "Kent County Sheriffs Department Association," select All Filings, select View Filings) (last visited Oct. 9, 2024). The filed documents reveal that the name has been changed to the Kent County Deputy Sheriffs' Association and that the association is a non-profit labor union for corrections officers.

Plaintiff alleges no facts regarding the union. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials [or entities] arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person or entity is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2

(6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention, much less attribute any misconduct to, the union in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's claim against the "Kent County Deputy Sheriffs Ass'n" is properly dismissed.

As to Defendant "Kent County Sheriffs Office," the "Kent County Sheriffs Office" does not exist as a separate legal entity; it is simply a department of the county. *Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cnty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) and *Bayer v. Almstadt*, 185 N.W.2d 40, 41 (Mich. Ct. App. 1970)). Accordingly, any claims against the "Kent County Sheriffs Office" are properly dismissed.

Construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Kent County. As the Court explained in *Bonham I*, Kent County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005);

*Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Plaintiff indicates that he is suing the "Sheriffs Office"—construed liberally to be the county—for the failure of deputies to respond to Plaintiff's kites regarding the sexual abuse. (Compl., ECF No. 1, PageID.6.) As noted above, the county is not vicariously liable for the failure of the deputies to respond to the kites. *See Connick*, 563 U.S. at 60; *City of Canton*, 489 U.S. at 392; *Monell*, 436 U.S. at 694. Moreover, Plaintiff does not allege any facts that support the inference that his constitutional injury was incurred because of a Kent County policy or custom. Accordingly, Plaintiff has failed to state a claim against Kent County.

### C.    Defendants Corizon and VitalCore

Defendants Corizon and VitalCore provide, or provided, healthcare services in the Kent County Correctional Facility. In Plaintiff's complaint, after Plaintiff alleges that Family Outreach should be liable for the abuse Plaintiff suffered at the hands of its employees, Plaintiff states: "VitalCore and Corizon Health Strategies also." (Compl., ECF No. 1, PageID.6.) Plaintiff alleges no other facts regarding these Defendants. Moreover, he makes no allegations regarding VitalCore or Corizon employees. As noted above, it is a basic pleading essential that a plaintiff attribute

factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Because Plaintiff has failed to do that with regard to VitalCore or Corizon, his claims against those Defendants are properly dismissed.

### D.    Defendant Bradley Lyons

Plaintiff alleges that Defendant Lyons entered Plaintiff's cell while he and his cellmate were sleeping. (Compl., ECF No. 1, PageID.5.) Lyons asked Plaintiff questions about the incidents with Deputies Jourden and Dewitt. (*Id*.) Plaintiff jumped off his top bunk, startling Defendant Lyons, who passed gas and then left. (*Id*.) No matter how liberally the Court construes these allegations, it is simply not possible to find a constitutional violation. Perhaps Plaintiff seeks to impose liability on Defendant Lyons for the alleged constitutional violations by another defendant.

However, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Lyons

engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against Defendant Lyons.

### E. Defendant Dewitt

Plaintiff alleges that, because he was "getting help" related to a rumor about Defendant Jourden, Defendant Dewitt retaliated against Plaintiff by denying him a dinner tray on July 23, 2021. (Compl., ECF No. 1, PageID.4.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Campbell*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Indeed, a plaintiff is protected in presenting grievances against prison officials, on the plaintiff's own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v.*

12

*Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Plaintiff does not explain what he means by "getting help." It appears to relate to Defendant Jourden's alleged sexual encounter with another inmate. It is certainly possible that Plaintiff might file a grievance regarding such an encounter. But it is simply not clear whether such a grievance was filed on Plaintiff's behalf or on behalf of the other inmate.[7] Plaintiff's allegations regarding "getting help" are so limited that it is not possible to determine whether he is alleging protected conduct. For purposes of this preliminary analysis, however, the Court will presume that Plaintiff complained about Jourden's conduct on Plaintiff's own behalf such that Plaintiff's conduct was protected.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

---

[7] A prisoner does not have an independent right to help others with their legal claims and grievances, unless the inmate receiving the assistance would otherwise be unable to seek redress. *Herron*, 203 F.3d at 415–16 (citing *Thaddeus-X*, 175 F.3d at 395) (holding that while a prisoner does not have an independent right to help others with their legal claims and grievances, such conduct is protected when the inmate receiving the assistance would otherwise be unable to seek redress).

Here, Plaintiff alleges that he was denied a dinner tray on one occasion. (*See* Compl., ECF No. 1, PageID.4.) The Sixth Circuit Court of Appeals recently concluded that missing one meal would not be considered adverse action:

> In this case, the district court held that Moore's retaliation claim failed as a matter of law because being made to miss a single meal is not an adverse action. We agree. Although satisfying the adverse-action element is not an onerous burden, *see* [*Thaddeus-X*, 175 F.3d] at 398, the denial of a single meal, even taking into consideration Moore's diabetes, is a de minimis event that would not deter a prisoner of ordinary firmness from engaging in protected conduct. *See Oliver v. Parkkila*, No. 13-2448, slip op. at 4 (6th Cir. May. 16, 2014) (citing *Romero v. Lann*, 305 F. App'x 242, 243 (5th Cir. 2008) (per curiam) (denying a retaliation claim because the denial of two meals in eight months was de minimis); and *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (holding that the provision of only one meal a day for fifteen days was not cruel and unusual punishment under the Eighth Amendment)); *Watkins v. Rogers*, 525 F. App'x 756, 759 (10th Cir. 2013) (finding "a single, isolated incident" where a prisoner was "not provided a meal" did not violate an inmate's constitutional rights"); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation.").

*Moore v. Liewert*, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023). Accordingly, Plaintiff's retaliation claim fails at the second step of the analysis. Plaintiff's claim against Defendant Dewitt, therefore, is properly dismissed.

### F.    Defendant Jourden

Defendant Jourden stopped at Plaintiff's cell door one day and asked Plaintiff and his cellmate if they had heard that Jourden had a sexual encounter. (Compl., ECF No. 1, PageID.5.) That question made Plaintiff and his cellmate "very afraid." (*Id*., PageID.5–6.)

Plaintiff contends that he suffered "cruel and unusual punishment," which is prohibited by the Eighth Amendment. (Compl., ECF No. 1, PageID.3.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate

14

indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

But the Eighth Amendment limitation applies to "punishments" and a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote and citations omitted). Put differently, the Eighth Amendment's limit on "punishment" does not apply to a pretrial detainee because a pretrial detainee may not be punished at all. *Id*. at 536–37 (explaining that "the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment"). When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted).

Until recently, whether the Court considered a deliberate indifference claim under the Eighth Amendment or the Fourteenth Amendment did not make a difference because the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir.

2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in the context of considering a pretrial detainee's claim for the use of excessive force, the Supreme Court concluded that application of the Eighth Amendment standard—requiring that the "detainee must show that the officers were *subjectively* aware that their use of force was unreasonable"—was not appropriate. 576 U.S. at 391–92. Instead, the Court held that a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396–97.

In *Brawner*, the Sixth Circuit concluded that the modification of the subjective component that *Kingsley* applied in the excessive force context was appropriately applied to other deliberate-indifference claims. The *Brawner* court described the modification as a shift from the criminal recklessness standard adopted for the subjective element of an Eighth Amendment claim in *Farmer v. Brennan*, 522 U.S. 825 (1994), in favor of a "civil standard for recklessness," *Brawner*, 14 F.4th at 596. *Farmer* described that civil standard as follows: "[t]he civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 522 U.S. at 836; *see also Howell v. NaphCare, Inc*., 67 F.4th 302, 311 (6th Cir. 2023) (explaining that "[a]pplying *Kingsley*'s reasoning, *Brawner* held that a pretrial detainee must make a showing . . . that each defendant acted deliberately [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (internal quotation marks, footnote, and citations omitted)). This is a "distinction with[] a difference." *Howell*, 67 F.4th at 311.

Because Plaintiff's status at the time of Jourden's alleged wrongdoing impacts the resolution of his claim, the Court must determine whether Plaintiff was a convicted prisoner or a

pretrial detainee. Plaintiff was a convicted prisoner in three cases[8] at the time of the events alleged in his complaint; but, he had completed the jail sentences imposed. He was in jail pending trial on weapons and drug charges in *People v. Bonham*, No. 21-004515-FH (Kent Cnty. Cir. Ct.).[9] Those new criminal acts charged, if proven, would violate the terms of Plaintiff's probation in the three prior cases. The question of Plaintiff's status, therefore, is not easily resolved.

Judge Robert E. Wier of the United States District Court for the Eastern District of Kentucky tackled that difficult question in *Bond v. Moore*, 672 F. Supp. 3d 357 (E.D. Ky. 2023), noting that "[t]he Sixth Circuit has never explicitly decided whether someone detained for a probation violation is a pretrial detainee or a convicted prisoner . . . ." *Bond*, 672 F. Supp. 3d at 368. Judge Wier reviewed the cases considering the issue and he concluded that a person jailed pending adjudication of a probation violation is a pretrial detainee. *Id*. at 368–69. Judge Wier's reasoning is persuasive. The Court will, therefore, consider Plaintiff's claim under the Fourteenth Amendment Due Process Clause.

The Sixth Circuit has concluded that sexual assault/abuse claims involving physical contact are to be viewed as excessive force claims and evaluated under the *Kingsley* objective test. *Hale v. Boyle Cnty.*, 18 F.4th 845, 852–53 (6th Cir. 2021). The *Kingsley* objective test, however, is premised on physical contact. *Id*. at 852 ("*Kingsley* set forth a two-prong inquiry for Fourteenth

---

[8] The registers of actions for the three cases are available through the Kent County website, *see* https://www.accesskent.com/CNSearch/appStart (select Criminal Case Search, enter First Name "Kevin," enter Last Name "Bonham," enter Year of Birth "1989," select Search Criminal Cases, select Case Numbers "20-02190-FH," "20-01175-FH," and "20-01173-FH") (last visited Oct. 18, 2024).

[9] The register of actions for the prosecution is available through the Kent County website, *see* https://www.accesskent.com/CNSearch/appStart (select Criminal Case Search, enter First Name "Kevin," enter Last Name "Bonham," enter Year of Birth "1989," select Search Criminal Cases, select Case Number "21-004515-FH") (last visited Oct. 18, 2024).

Amendment excessive-force claims. First, an official must purposefully, knowingly, or ("possibly") recklessly engage in the alleged physical contact with the detained person . . . . Second, the official's use of force must be objectively unreasonable."). In Plaintiff's case there was no physical contact. Instead, Plaintiff's claim is still properly evaluated under the "Eighth Amendment framework[]" that the courts historically applied "to detained persons' Fourteenth Amendment claims of every variety," *id.*, with the modification stated in *Brawner*: "to establish deliberate indifference in this context . . . [m]ere negligence is insufficient[; a] defendant must have not only acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner*, 14 F.4th at 596.

Sorting out precisely how the second prong of the analysis should be applied has not been a simple matter. *See, e.g.*, *Trozzi v. Lake Cnty.*, 29 F.4th 745, 753–58 (6th Cir. 2022) (concluding that the two-element *Farmer* analysis, after *Kingsley* and *Brawner*, becomes a three-element analysis when the plaintiff is a pretrial detainee, one element regarding the seriousness of the risk and two elements capturing the new subjective requirements); *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022) (adopting a four-element test for a failure to protect claim); *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315–17 (6th Cir. 2023) (rejecting the *Trozzi* analysis in favor of the modified two-element analysis set forth above); *see also Helphenstine v. Lewis Cnty.*, 65 F.4th 794, 802 (6th Cir. 2023)( Statement of J. Readler regarding denial of rehearing en banc) (decrying the confusion that has followed *Brawner* and noting that "we are left to muddle on, following paths leading in any and all directions"). Based on Plaintiff's allegations, it is not necessary to pick a path that leads to a "sufficiently culpable state of mind," *Gomez v. City of*

*Memphis*, No. 21-5473/5644, 2023 WL 7287100, at \*4 (6th Cir. Aug. 4, 2023), because Plaintiff has failed to identify a sufficiently serious harm. His claim fails on the first element of the analysis.

*Farmer*'s first element of the Eighth Amendment analysis continues to be applicable to claims of pretrial detainees. *See, e.g.*, *Batton v. Sandusky Cnt*y., No. 23-3168, 2024 WL 1480522, at \*3 (6th Cir. Apr. 5, 2024) (noting that the elements of a deliberate indifference claim for a pretrial detainee mirror the elements for a convicted prisoner with an objective and subjective component, but the subjective component is modified). "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty* 915 F.3d at 1095 (citing *Farmer v. Brennan*, 511 U.S. 825, 848–49 (1994) (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards)). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Moreover, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76

F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."). Other courts have agreed. *See, e.g.*, *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a prison official sexually harassed a prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is wholly distinguishable from Plaintiff's claim. Plaintiff does not allege that Jourden ever coerced Plaintiff into engaging in sexual conduct. Instead, Plaintiff claims only that Jourden asked one admittedly inappropriate question in the presence of Plaintiff's cellmate. This single incident of inappropriate communications falls short of objectively serious punishment that is barred by the Fourteenth Amendment.

Because Plaintiff fails to allege facts supporting the objective prong of the deliberate-indifference test, his Fourteenth Amendment claim against Defendant Jourden will be dismissed.

### G.    Defendant Santiago

Plaintiff does not allege that Defendant Santiago took any action against Plaintiff. As noted above, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Because Plaintiff has failed

to do that with regard to Defendant Santiago, his claims against Defendant Santiago are properly dismissed.

### H.     Defendant LaJoye-Young

Finally, Plaintiff sues Sheriff Michell LaJoye-Young. Plaintiff does not allege that Defendant LaJoye-Young took any action against Plaintiff.

It is possible that Plaintiff seeks to hold Defendant LaJoye-Young responsible for the alleged unconstitutional actions of her subordinates. As explained above, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at, 691; *Everson*, 556 F.3d at 495. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant LaJoye-Young encouraged or condoned the conduct of her subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about her conduct. His vague allegations are insufficient to support the inference that Defendant LaJoye-Young was personally involved in the events alleged in the complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's allegations against Defendant LaJoye-Young fails to state a claim upon which relief may be granted.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this opinion will be entered.


Dated:    October 24, 2024                    /s/ Jane M. Beckering
                                              Jane M. Beckering
                                              United States District Judge